UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                                         :
FRANCIS BAEZ,                                            :
                                                         :
                                     Plaintiff,          :          12 Civ. 3672 (KPF)
                                                         :
                      v.                                 :
                                                         :          OPINION AND ORDER
DELTA AIRLINES, INC.,                                    :
                                                         :
                                     Defendant.          :
                                                         :
--------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   09/18/2013

**KATHERINE POLK FAILLA, District Judge:**

On April 10, 2012, Plaintiff Francis Baez initiated this action, alleging tort claims in connection with injuries he sustained when he was thrown from a vehicle owned and maintained by Defendant Delta Airlines ("Delta").[1]  Fact discovery having been completed on April 1, 2013, Plaintiff now moves to amend his complaint and for spoliation sanctions against Delta.  For the reasons set forth in the remainder of this Opinion and Order, the motions are denied.

## FACTUAL BACKGROUND

### A.    Plaintiff's January 3, 2011 Accident

The following facts are taken from Plaintiff's Amended Verified Complaint (the "Complaint" or "Am. Compl.") (Dkt. #7) and the materials submitted in connection with the parties' moving papers (Dkt. #30-35, 39-42, 44-46).[2]  During the

---

[1]    Rosaura Cabrera, Plaintiff's wife, also brought claims for deprivation of services as a result of Plaintiff's injuries.  Cabrera's claims were voluntarily dismissed on November 26, 2012. (Dkt. #10).

[2]    The parties have attached a number of excerpts from the relevant deposition transcripts and other supporting documents, rather than the complete transcripts or documents.  For clarity,

relevant time period, Plaintiff was employed by Aramark Aviation Services, LLP ("Aramark"), and worked on the tarmac at John F. Kennedy International Airport ("JFK") servicing Delta planes.  (Am. Compl. ¶ 5; Baez Aff. ¶ 3).  Pursuant to their Airport Services Master Agreement, Delta provided vehicles for use by Aramark and Aramark's employees.  (Baez Aff. ¶ 5; Crowley Amend Ex. G).

On January 3, 2011, Plaintiff and Fernando Cisneros[3] were riding in the back of a truck that was owned and maintained by Delta (the "Vehicle"), and driven by Victoriano Ysabel.  (Baez Tr. 35-37, 41-48; *see also* Rutsky Amend Ex. M (photo of the Vehicle)).  All three men were Aramark employees.  The Vehicle had two seats with corresponding seatbelts, both of which were in the front cabin.  (Baez Tr. 35; Ysabel Tr. 8; Tejada Tr. 15).

At around 6:30 p.m. on the night of January 3, 2011, Ysabel, Plaintiff, and Cisneros had just finished servicing a plane.  (Baez Tr. 38-39, 41).  Ysabel told Cisneros and Plaintiff that he was going to move the Vehicle.  (Ysabel Tr. 25).  At that time, Cisneros was in the back of the Vehicle, and Plaintiff was sitting on a cardboard box in the back of the Vehicle.  (Baez Tr. 39-40, 58).

According to Ysabel, when he attempted to shift the Vehicle into drive, it suddenly accelerated, causing Plaintiff, Cisneros, and the cargo to be thrown from the back of the Vehicle (hereinafter, the "accident").  (Ysabel Tr. 18).  Plaintiff

---

the Court will cite to the deposition transcript or document as a whole, rather than to each individual excerpt.  All moving papers, declarations, and affidavits in relation to the Motion to Amend shall be cited as "Amend"; those for the Motion for Spoliation Sanctions shall be cited as "Spol."

[3]   Plaintiff refers to his co-worker as "Diego," but the Port Authority accident report refers to him as Fernando Cisneros.  Their immediate supervisor, Yaskada Tejada, also refers to him as Cisneros.  He will be referred to as Cisneros throughout this Opinion.

suffered a fractured right elbow, as well as injuries to his right foot, ankle, and ribs. (Baez Tr. 10). Plaintiff and Cisneros were removed from the scene by ambulance. (Baez Tr. 58-59).[4]

## B.   Relevant Record-Keeping Practices At Delta And Aramark

### 1.   Vehicle Maintenance And Repair Records

Delta's Ground Support Equipment ("GSE") department is responsible for the maintenance and repair of Delta's approximately 2,258 vehicles at JFK. (McNamara Aff. ¶ 2). Delta maintains all records related to the maintenance and repair of its vehicles in its "EBIS" computer system. (*Id.* ¶ 3; DeVito Aff. ¶ 2). GSE mechanics do not generate contemporaneous handwritten records, and all work performed on Delta vehicles is directly entered into and contained in the EBIS system. (McNamara Aff. ¶ 4; DeVito Aff. ¶ 2). If an operator reports a problem with a vehicle, either in writing or verbally, the complaint and any repair information is entered into EBIS, thereby creating the necessary work order. Thus, work orders are not paper documents, but rather are entries in EBIS corresponding to a repair or complaint. (McNamara Aff. ¶ 4; *see* EBIS Records, Column D).[5] Because the information is already contained in EBIS, Delta does not maintain any

---

[4]     Plaintiff, Cisneros, and Ysabel were in violation of a number of Port Authority, Aramark, and Delta policies at the time of the accident. (*See generally* Ysabel Tr. 60-61; Tejada Tr. 81). Specifically, it was a violation of Port Authority and Aramark rules to move the Vehicle while Plaintiff and Cisneros were in the back of it. (Ysabel Tr. 25, 45). Ysabel should have used either Plaintiff or Cisneros as a guide to move the Vehicle near aircraft. (Tejada Tr. 79). Also, a blue curtain on the back of the Vehicle was open at the time of the accident, in violation of Aramark and Port Authority rules. (Ysabel Tr. 47-48; Baez Tr. 47).

[5]     The parties have attached the relevant EBIS records in both hard-copy and electronic formats. *See* Rutsky Spol. Ex. R (printout of the EBIS records for the Vehicle for the two years prior to the accident (the "EBIS Records")); Crowley Spol. Ex. D (Excel spreadsheet of the EBIS records).

handwritten or paper documents related to complaints about a vehicle, or a vehicle's maintenance or repair.  (*Id.*).

### 2.    Delta And Aramark Pre-Operational Inspection Forms

Aramark provides its drivers with Aramark Pre-Operational Inspection ("POI") forms when they operate Delta vehicles.  (McNamara Tr. 92).[6]  If there is a problem with a vehicle, Aramark procedure requires the driver to note the problem on the Aramark POI form and provide the form to the driver's supervisor.  (Tejada Tr. 32-33).  The supervisor would then notify Delta of the problem.  (*Id.*). [7]  Aramark retained its POI forms for three months.  (*Id.*).

Delta GSE maintains its own POI forms, which are used only on the vehicles within the GSE department.  (McNamara Tr. 92; *see* Rutsky Spol. Ex. N (example of GSE POI form)).  Pursuant to Delta's policy, Delta GSE POI forms are retained for 30 days.  (*See* Delta Safety Policies and Procedures Manual at 46).

### 3.    Post-Accident Inspection Forms

If an accident at JFK involving a vehicle results in injury, the Port Authority of New York and New Jersey (the "Port Authority") confiscates the vehicle's license plates pursuant to its policies — thereby effectively taking the vehicle out of

---

[6]    Defendant noted in its response to Plaintiff's Third Request for Production of Documents that Aramark was responsible for its own POI forms, and that any request for POI forms was properly directed to Aramark.  (Crowley Amend Ex. C).  It is unclear when the sample Delta GSE POI form included as Exhibit N to the Rutsky Spoliation Affidavit was produced to Plaintiff.  There is no indication in the record that Plaintiff obtained a copy of the Aramark POI form, or if the forms differed in any meaningful (or, indeed, discernible) respects.

[7]    Tejada, an Aramark employee, and Daniel McNamara, the Manager of Delta's GSE Department at JFK, provided inconsistent testimony regarding whether Aramark would ever provide a POI form to Delta.  Tejada testified that Aramark would provide Delta with the Aramark POI form only if "there is something wrong with the vehicle."  (Tejada Tr. 32-33).  McNamara submitted a sworn affidavit stating that Delta would not receive copies of Aramark's POI forms.  (McNamara Aff. ¶ 7).

service — and returns the plates after it completes a safety check.  (Syska Tr. 16-17).  Delta's GSE mechanics must perform a separate "post-accident safety check" of a vehicle before the Port Authority will complete its safety check.  (DeVito Tr. 27).

Delta provides its mechanics with a Post Accident Safety Check form, which is a checklist to use when performing a post-accident safety check.  (McNamara Tr. 38-39; Rutsky Spol. Ex. J).  The mechanic is not required to fill out the form, and generally the information contained in it is used as a guide.  (McNamara Aff. ¶ 5).  Some mechanics do not even use the Post Accident Safety Check form because they are familiar with the required steps.  (DeVito Tr. 62).  If a mechanic performs any repairs, the information is logged into EBIS.  (McNamara Tr. 32; McNamara Aff. ¶ 6).  As such, Delta does not retain Post Accident Safety Check forms completed by its mechanics.  (McNamara Aff. ¶ 5).

### 4.    Turnover Sheets

Delta's GSE mechanics utilize "turnover sheets" to apprise the next shift's crew of the work that has been, and needs to be, completed on vehicles in the shop.  (DeVito Aff. ¶ 3).  However, any work actually performed on a vehicle is logged into EBIS.  (*Id.*).  Turnover sheets are retained by Delta for 30 days and then discarded.  (*Id.*).

## C.    The Pre-Accident Vehicle Complaint

Ysabel testified that several days prior to the accident, the Vehicle "had problems … with the accelerator … [t]he accelerator would get stuck."  (Ysabel Tr. 14).  Ysabel stated that he brought the Vehicle to "the shop" and "reported that

the truck had problems with the accelerator." (Ysabel Tr. 19).[8]  However, there is

no record of Ysabel's complaint in Delta's EBIS records.  (*See* EBIS Records).

Yaskada Tejada, Ysabel's immediate supervisor at Aramark, testified that there

were no complaints made by anyone at Aramark about the Vehicle's alleged

acceleration issue prior to the accident.  (Tejada Tr. 51-52).

## D.   Post-Accident Events

Port Authority Officer J. Spatz responded to the scene of the accident on

January 3, 2011, and completed a post-accident report.  (*See* Port Authority

Accident Report).[9]  The report quotes Ysabel as stating that "the gas pedal got stuck

causing the Vehicle to travel in an unsafe manner."  (*Id.*).  The report lists "Cosmo

Cruz" as a witness.  (*Id.*).

As is standard Port Authority protocol when an accident results in injury,

Officer Spatz removed the license plates from the Vehicle, pending a final safety

inspection by the Port Authority.  (Syska Tr. 16-17).  Delta mechanic Phil DeVito

---

[8]    Ysabel's testimony about whether he provided a written complaint to anyone regarding the
Vehicle's acceleration issues prior to the accident is somewhat inconsistent.  When asked
directly "[d]id you have to fill out any forms related to the issue with the accelerator a couple
of days before the accident?," Ysabel responded, "[t]hat day they took it to the shop, I didn't
fill out any forms, but I did let them know what the problem was with the truck."  (Ysabel
Tr. 15-16).  Ysabel did not know the name of the mechanic with whom he spoke, whether the
mechanic filled out a form reflecting his complaint, what was done to the Vehicle, or how
long it was in the mechanic's shop.  (*Id.*).

Later in his deposition, in response to a question regarding whether he completed an
Aramark POI form, Ysabel stated that "I don't recall exactly what I wrote.  I do know that
the truck was taken to the shop and it was reported that it was accelerating on its own."
(Ysabel Tr. 56).  As noted, neither Delta nor Aramark have any records of Ysabel's complaint.
(*See* Tejada Tr. 36; EBIS Records; Rutsky Spol. Ex. Q).

Plaintiff, through counsel, states that Ysabel "verbally and in writing informed the Delta
mechanics of the unintended acceleration issue."  (Rutsky Spol Aff. ¶ 7).  While Ysabel's
testimony does support the assertion that he verbally notified a GSE mechanic of the
unintended acceleration, it does not support the assertion that he did so in writing.

[9]    Officer Spatz's full first name is unknown.  (*See* Port Authority Accident Report, Rutsky
Spol. Ex. G).

then drove the Vehicle from the accident site to the garage, and observed that there was "nothing wrong" with the Vehicle, particularly with the accelerator or the brakes. (DeVito Tr. 27).

DeVito made an entry in EBIS noting that a safety check was needed, and that the "vehicle [was] involved in accident, driver claims vehicle jumped into gear and accelerated." (DeVito Tr. 27; EBIS Records). DeVito left at the end of his shift, and another GSE mechanic performed a post-accident safety check shortly thereafter, and made no repairs to the Vehicle. (DeVito Tr. 27). The Vehicle passed a Port Authority safety check the following day, and was placed back into service. (McNamara Tr. 44-45; Crowley Spol. Ex. K).

## E.    The Instant Litigation

Plaintiff initiated this action in April 2012, alleging that Delta was negligent in its ownership, repair, maintenance, upkeep, servicing, and/or inspection of the Vehicle. (Am. Compl. ¶¶ 12-15).

On August 6, 2012, the Honorable Paul G. Gardephe, the District Judge to whom this case was then assigned, entered a Civil Case Management Plan and Scheduling Order (the "August 6, 2012 CMP"). The August 6, 2012 CMP specified that "[e]xcept for good cause shown, any motion to amend pleadings must be filed within 30 days from the date of this Order (i.e., by September 5, 2012)." (Dkt. #8). On August 17, 2012, Defendant filed its Rule 26(a)(1) Initial Disclosure. (Rutsky Amend Ex. E). Delta disclosed that it was investigating the accident, and had not located any documents that may be used to support its defenses, but promised to supplement its disclosure if necessary. (*Id.*).

At a January 16, 2013 conference, Plaintiff's counsel asked Judge Gardephe for a 60-day extension of fact discovery to allow him to depose three outstanding witnesses.  (January 16, 2013 Conference Transcript ("Jan. 16 Tr.") at 9-10) (Dkt. #20).  Defendant consented to this request, and on January 21, 2013, Judge Gardephe entered an amended Civil Case Management Plan and Scheduling Order (the "January 21, 2013 CMP").  (Dkt. #14).  Like the August 6, 2012 CMP, the January 21, 2013 CMP specified that "any motion to amend pleadings must be filed within 30 days from the date of this Order (i.e., by February 20, 2013)."  (*Id.*).

The parties engaged in fact discovery from August 2012 to April 1, 2013. (Dkt. #14).  Thereafter, on April 30, 2013, Plaintiff served Defendant with his expert disclosure and report.  (Rutsky Amend Ex. M).  On May 15, 2013, Defendant requested an extension of time within which to serve its own responsive expert disclosure with respect to liability, noting that Plaintiff's expert report "provide[d] several opinions which [went] beyond, and [were] different from, the claims made by plaintiff in the Complaint, and therefore were completely unexpected by Delta." (Rutsky Amend Ex. N).  In particular, Defendant alleged that Plaintiff was asserting for the first time that Delta failed to provide enough seats in the Vehicle, and that Delta knew the Vehicle was routinely used by three-person crews in violation of Delta, Aramark, and Port Authority policies.  (*Id.*).

As a result, Judge Gardephe held a conference on June 6, 2013.  At the conference, Plaintiff argued that the claims contained in his expert report regarding whether the Vehicle had the proper number of seats were consistent with the claims contained in the Complaint.  (June 6, 2013 Conference Transcript ("June 6 Tr.") at

3-4).  Judge Gardephe disagreed, and informed Plaintiff that he was asserting new

allegations, and that if Plaintiff intended to proceed on those allegations, it would

be "necessary" for Plaintiff to move to amend the Complaint.  (*Id.* at 8-9).  Plaintiff

raised for the first time, by pre-conference letter and at the conference, the issue of

spoliation sanctions.  (*Id.* at 12).  Defendant opposed both the motion to amend and

the motion for spoliation sanctions.  (*Id.* at 4-9).  Judge Gardephe set a briefing

schedule for both motions, after which the matter was reassigned to this Court.

## DISCUSSION

## A.   Plaintiff Is Denied Leave To Amend His Complaint

In his Motion to Amend, Plaintiff seeks to add the following allegations to his

Complaint:[10]

> 11.   At the time of the accident, plaintiff was working
> with a three man crew from Aramark using the
> Vehicle.
>
> 12.   The Vehicle only had two seats, with corresponding
> seatbelts.
>
> 13.   Aramark employees regularly worked in three-
> person crews using Delta-owned vehicles that had
> only two seats with corresponding seatbelts.
>
> 14.   Delta knew that three-person Aramark crews
> regularly used the Vehicle and other similar
> vehicles possessing only two seats.
>
> 15.   The Vehicle did not include any signage alerting
> the users of the rules regarding vehicle use or any

---

[10]   Plaintiff also seeks to remove Rosaura Cabrera's name from the case caption, and remove
mention of the claims Cabrera voluntarily dismissed on November 26, 2012.  (Rutsky Amend
Aff. ¶ 12).  For the reasons discussed in this section of the Opinion, Plaintiff is denied leave
to amend the Complaint to include new claims.  It is also unnecessary at this time to make
the housekeeping amendments Plaintiff seeks.

> warning regarding the maximum occupancy of the
> vehicle.

(Prop. Am. Compl. ¶¶ 11-15).  But while Plaintiff asserts repeatedly that he is merely seeking to add details to "clarify" claims already made, a careful review of the record makes clear that Plaintiff is in fact trying to introduce, at the eleventh hour, an entirely new theory of the case.  Given the lateness of his request, the information available to him at various points in the litigation, and the prejudice to Defendant were the motion to be granted, the Court denies Plaintiff's request.

### 1.    Applicable Law

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (instructing that the mandate that leave to amend should "be freely given when justice so requires … is to be heeded"); *Ruffolo* v. *Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  "[I]t is within the sound discretion of the district court whether to grant or deny leave to amend."  *Zahra* v. *Town of Southold*, 48 F.3d 674, 687 (2d Cir. 1995).  Moreover, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."  *Block* v. *First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).  When determining whether to grant leave to amend, district courts consider: (i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment

will be futile.  *See Foman*, 371 U.S. at 182; *see also Gormin* v. *Hubregsen*, No. 08

Civ. 7674 (PGG), 2009 WL 35020, at *1 (S.D.N.Y. Jan. 6, 2009) (granting motion).

Where, as here, the court has filed a scheduling order pursuant to Rule 16(b)

of the Federal Rules of Civil Procedure that limits the parties' ability to amend the

complaint, "the lenient standard under Rule 15(a), which provides leave to amend

'shall be freely given,' must be balanced against the requirement in Rule 16(b) that

the Court's scheduling order 'shall not be modified except upon a showing of good

cause.'" *Grochowski* v. *Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting older

versions of Federal Rules of Civil Procedure 15(a) and 16(b)), *cited in Holmes* v.

*Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009).  Whether good cause exists requires

the court to inquire into the "diligence of the moving party."  *Id.*; *see also In re Gen.*

*Elec. Co. Sec. Litig.*, No. 09 Civ. 1951 (DLC), 2012 WL 2892376, at *3 (S.D.N.Y. July

12, 2012) (holding that plaintiffs' lack of diligence does not constitute good cause,

and that "[h]aving made a tactical decision to pursue a particular legal theory …

Plaintiffs will not be excused from the necessary consequences of this decision").

Diligence of the moving party is not, however, the only consideration.  The

district court, in the exercise of its discretion under Rule 16(b), also may consider

other relevant factors including, in particular, whether "the motion is made after an

inordinate delay, no satisfactory explanation is offered for the delay, or the

amendment would prejudice the defendant." *Cresswell* v. *Sullivan & Cromwell*, 922

F.2d 60, 72 (2d Cir. 1990) (citing *Tokio Marine & Fire Insurance Co.* v. *Employers*

*Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986).  The moving party bears the

burden of demonstrating a satisfactory explanation for the delay. *See Sanders* v. *Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983).

### 2.    Application

#### a.    Plaintiff Has Not Demonstrated Good Cause

Plaintiff has not demonstrated good cause for his failure to timely amend the Complaint. Plaintiff dedicates the entirety of his moving brief to the deadlines established by the August 6, 2012 CMP, all without mentioning, attaching, or acknowledging that that earlier CMP was superseded by the Court's January 21, 2013 CMP. (*See* Pl. Amend at 3-4).[11] The Court must assume that this omission is an oversight, because the alternative — that Plaintiff attempted to mislead the Court, which had only recently received the case in reassignment — is simply too troubling.

In any event, Plaintiff has not offered an adequate justification for his delay. Courts may "deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *Nightingale Grp., LLC* v. *CW Capital Mgmt., LLC*, No. 11 Civ. 9293 (PAE), 2012 WL 2674539, at

---

[11]    Plaintiff did not mention the January 21, 2013 CMP until his reply brief, presumably after noting the extensive discussion of that document in Defendant's opposition papers. Even then, Plaintiff tried to shift blame onto Defendant, offering the revised explanation that his "delay was further caused by the fact that plaintiff was unable to retain an expert until April 2013, due to [the] extensive discovery delays by defendant" set forth in Plaintiff's companion Motion for Spoliation Sanctions. (Pl. Amend Rep. at 3). As discussed throughout this Opinion, the Court finds that Defendant did not spoliate evidence or cause undue discovery delays. Plaintiff's argument is rendered more dubious by the facts that (i) Plaintiff did not even hint at discovery disputes until his Motion for Spoliation Sanctions and (ii) Plaintiff's counsel represented to the Court on January 16, 2013 — before the issuance of the revised CMP — that he had already consulted with an expert. (Jan. 16 Tr. 10).

*11 (S.D.N.Y. July 5, 2012) (citing *Berman* v. *Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997)); *cf. Bay Harbour Mgmt., LLC* v. *Carothers*, 474 F. Supp. 2d 501, 503 (S.D.N.Y. 2007); *Tyco Labs., Inc.* v. *Cutler–Hammer, Inc.*, 490 F. Supp. 1, 3 (S.D.N.Y. 1980) (denying motion to amend where "plaintiffs could have moved to amend and supplement their complaint in the manner proposed long before now and ... granting plaintiffs' motion at this time would not serve the interests of justice").

Plaintiff protests that he could not have amended his Complaint by September 5, 2012, because the only discovery he had received was Delta's Rule 26(a)(1) Initial Disclosure, which, he argues, was "patently devoid of any actual disclosures." (*See* Pl. Amend at 3). However, Plaintiff neglects to mention that by the time the February 20, 2013 deadline to amend had passed — which was the operative deadline — he had received a substantial amount of discovery from Delta, and had completed a number of important depositions, including his own.

The record confirms that Plaintiff had access to the information needed to support the newly proposed claims well before the February 20, 2013 deadline. Tellingly, Plaintiff and his counsel use Plaintiff's own affidavit and deposition testimony to support many of the facts that Plaintiff learned "during the course of discovery." (*See* Rutsky Amend Aff. ¶¶ 5, 6; Baez Tr. 36; Baez Aff. ¶¶ 4-5, 8, 11).[12] Presumably, such facts were learned long before Plaintiff swore out his affidavit or sat for his deposition. Even assuming *arguendo* that Plaintiff had never before

---

[12]   Defendant has listed the full panoply of discovery available to Plaintiff as of the February 20, 2013 deadline, which list Plaintiff does not contest, further supporting a finding that Plaintiff did not have good cause for his failure to amend. (*See* Def. Amend Opp. at 6-8).

discussed the Vehicle's seats with his counsel, counsel learned most of the necessary information no later than Plaintiff's deposition on October 2, 2012. (Baez Tr. 36). Moreover, even assuming that Plaintiff did not know the Vehicle was owned by Delta at the inception of the lawsuit (despite the Delta logo on the Vehicle's side), Delta stipulated to that fact on October 22, 2012, well before the February 20, 2013 deadline. (DeVito Tr. 6). Plaintiff is not entitled to amend the Complaint where he himself possessed nearly all the information he needed from the inception of this action. *See Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000) (denying leave to amend where plaintiff had access to the information he needed to support the proposed amendment prior to and throughout the litigation).

Nor does any misunderstanding on Plaintiff's part of his own Complaint constitute a reasonable basis for his delay. Plaintiff argues that the proposed "amendments merely add more details," and do not actually constitute new claims, but that is flatly wrong. (Pl. Amend Rep. at 3). The Court agrees with Defendant that "[P]laintiff now seeks to assert entirely new theories of negligence against [Delta] that were not clearly alleged in his prior complaints." (Def. Amend Opp. at 1).

Plaintiff originally brought claims related to Delta's negligent "ownership, repair, maintenance, upkeep, servicing, and/or inspection of the Vehicle." (Am. Compl. ¶ 13). By contrast, Plaintiff now seeks to bring claims related to Delta's "fail[ure] to provide sufficient seats, seatbelts or signage for use by operators of Delta's Vehicles, and/or fail[ure] to enforce their own policies and procedures regarding the proper use of their Vehicles." (Proposed Am. Compl. ¶ 19). Contrary

14

to Plaintiff's allegation that these claims relate to Delta's negligent ownership of the Vehicle, these claims are new because they are based upon different facts and would require the application of different law. *See Ansam Associates, Inc.* v. *Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying leave to amend where "[t]he proposed fraud claims allege an entirely new set of operative facts of which it cannot be said that the original complaint provided fair notice"); *Smith* v. *Cadbury Beverages, Inc.*, 942 F. Supp. 150, 160 (W.D.N.Y. 1996) (denying leave to amend where new claims were based upon "different factual circumstances, and in large part require application of different law"); *see also Conley* v. *Gibson*, 355 U.S. 41, 47 (1957) (holding that a defendant is entitled to "fair notice" of what the plaintiff's claim is and the grounds upon which it rests).

Plaintiff further explains that "the amendments would have been made before the February 20, 2013 deadline, had the plaintiff had notice that the additional facts were advisable … once plaintiff learned that the Court advised an amendment, plaintiff acted diligently in making the motion immediat[]ely." (Pl. Amend Rep. at 8). Obviously, the deadline to amend did not run from the Court's assessment of the plain language of Plaintiff's own Complaint, but rather from the January 21, 2013 CMP.[13]  For all of these reasons, Plaintiff has failed to demonstrate good cause for his delay.

---

[13]     Plaintiff suggests that the Court should infer that Plaintiff has shown good cause from the fact that Judge Gardephe somehow sanctioned, or "strongly recommended," the instant motion. (*See* Pl. Amend at 2, 4). Of course, allowing a party to make a motion certainly does not constitute pre-approval of that motion. More importantly, Plaintiff's characterization of the conference and of Judge Gardephe's actions is not borne out by the transcript, which the Court has reviewed in full. (*See* June 6 Tr. 3-4, 8-9; *see also* Def. Amend Opp. at 4).

### b.   Amending The Complaint Would Prejudice Defendant

Prejudice is one of "the most important reasons for denying a motion to amend." *Berman*, 986 F. Supp. at 217; *see also McFadden* v. *Sanchez*, 710 F.2d 907, 911 (2d Cir. 1983) (holding that modification of a pretrial order should not be allowed if it would seriously prejudice the defendant).  "Prejudice may be found if the amendment is sought after discovery has already closed." *Berman*, 986 F. Supp. at 217 (quoting 1 Michael C. Silberberg, *Civil Practice in the Southern District of New York* § 6.26)); *MacDraw, Inc.* v. *CIT Group Equip. Fin.*, 157 F.3d 956, 962 (2d Cir. 1998) (affirming denial of leave to amend where it was requested after the close of discovery, additional discovery would be required, causing undue prejudice to defendants, and delay was unexplained)); *see also Cresswell*, 922 F.2d at 72 (affirming denial of leave to amend because discovery was complete and motion for summary judgment had already been filed).

The Court agrees with Defendant that it would be severely prejudiced by the amendment of the Complaint.  To defend against Plaintiff's new claims, Defendant avers that it would need to:

- Re-depose Plaintiff, Victoriano Ysabel, and Yaskada Tejada to explore conflicting testimony regarding the regular use of three-man crews and Delta's knowledge thereof;

- Investigate and conduct discovery as to Aramark's use of three-person teams on two-person vehicles, the reason for doing so, and how that practice conflicted with applicable policies and procedures;

- Depose Aramark employees, particularly supervisors, regarding the use of three-person teams on two-person vehicles;

- Depose Aramark and Delta employees regarding the alleged knowledge that Delta had of three-person Aramark crews using two-person vehicles, and the applicable policies and procedures governing the use of two-person vehicles;

- Re-depose Tejada and as-yet-unidentified witnesses regarding the training Aramark employees received as to Delta policies and procedures;

- Conduct discovery regarding the relationship between Delta and Aramark, and investigate the representations Aramark made to Delta regarding how the Vehicle would be used;

- Conduct discovery regarding the signage used in Delta vehicles, and whether it is required by any applicable policies and procedures; and

- Conduct discovery regarding the feasibility of placing an additional seat in the rear of the two-person vehicles, including through depositions of the manufacturer.

(Def. Amend Opp. at 9-12). The Second Circuit has held that amendment is improper where, as here, the "the impact of the proposed new claim on the existing proceedings would have been substantial," would require defendant "to expend significant additional resources" to defend, and would have "significantly delay[ed] the resolution of the dispute." *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 727 (2d Cir. 2010) (citing *Block*, 988 F.2d at 350). Given that Plaintiff seeks to add new claims dealing with topics not explored through discovery, Defendant has ample reason and need to conduct additional discovery. Consequently, were the Court to grant Plaintiff's motion, it would not only delay the action, but require a substantial amount of discovery at significant cost to Delta.

Plaintiff raises a number of arguments to support his contention that amendment of the Complaint would not prejudice Delta, none of which succeeds. Plaintiff first asserts that the facts related to the new causes of action are "synonymous" with the facts used to support Delta's contributory negligence defense.  (Pl. Amend at 4; Rutsky Amend Aff. ¶ 7).  They are not.  A contributory negligence defense would rely primarily on evidence related to what Plaintiff did and knew at the time of the accident.  *See, e.g.*, *Rivera* v. *Farrell Lines, Inc.*, 474 F.2d 255, 257 (2d Cir. 1973) ("[c]ontributory negligence … connotes some careless act or omission on the part of the employee over and above that knowledgeable acceptance").  Here, by contrast, Plaintiff seeks to add claims that go to the longstanding customs and practices employed by Delta and Aramark, to say nothing of the technical feasibility of placing seats and seatbelts in the back of the Vehicle.

Plaintiff also argues that information about Delta's knowledge "lies in the state of mind of the Defendant," and thus no additional discovery is needed.  (Pl. Amend Rep. at 6).  However, in order to determine what Delta "knew," the parties must depose, or at a minimum interview, a number of Delta and Aramark employees to ascertain whether Delta was aware that three-person Aramark teams regularly used two-person vehicles.  This would entail significant time, delay, and cost.  As a corollary to this argument, Plaintiff suggests that in order to respond to the newly proposed allegations, Delta need only "call up" its witnesses and "ask a few questions."  (Pl. Amend Rep. at 6).  Again, given the number of witnesses and non-party witnesses that Delta would need to interview or depose, and the need to present that evidence in admissible form, telephone calls would not suffice.

18

Finally, and most curiously, Plaintiff argues that Defendant's failure to make a motion to reopen discovery in May 2013 is "proof of the lack of prejudice," and that "Delta has implicitly agreed that it has all the discovery it needs … and no prejudice will occur." (Pl. Amend at 4-5). To be sure, Defendant noted in its May 15, 2013 letter that Plaintiff had raised new causes of action. (Rutsky Amend Ex. N). Defendant was, however, under no obligation to make a motion to reopen discovery at that time. In fact, Delta noted at the June 6, 2013 conference that it needed time to confer with its own expert to determine how best to respond to the newly-added allegations. (June 6 Tr. 10). Delta did not waive its right to oppose this motion, and certainly did not concede that "it has all the discovery it needs." (Pl. Amend at 4-5).

In sum, the Court is troubled by the liberties taken by Plaintiff and his counsel with the record in advancing the Motion to Amend. A review of that record, and of the relevant law, compels denial of Plaintiff's motion because Plaintiff has failed to demonstrate good cause for the delay in seeking leave to amend, and because Defendant would suffer considerable prejudice were the amendment allowed to issue.

## B.  Plaintiff Has Failed To Demonstrate That Spoliation Sanctions Are Warranted

Plaintiff also moves for dismissal of Defendant's answer and entry of default judgment in his favor, or, in the alternative, for adverse inferences in relation to five categories of evidence that Defendant is alleged to have spoliated:

- The records created by Delta as part of its post-accident safety check of the Vehicle (the "Safety Check records");

- Written complaint records submitted to Delta by Aramark employee Victoriano Ysabel prior to the accident, allegedly complaining that the Vehicle unintentionally accelerated (the "Ysabel complaint");[14]

- Delta's pre-accident handwritten vehicle maintenance records, prepared contemporaneously by Delta mechanics when performing work on the Vehicle (the "handwritten maintenance records");

- An accident report prepared by Aramark (the "Aramark report"); and

- A video recording of the accident, allegedly captured by Delta's air traffic control tower camera (the "video").

(Pl. Spol. at 1-13).  Again, however, Plaintiff has failed to meet his burdens — this time, the burdens of demonstrating that (i) the "spoliated" evidence ever existed in the possession or under the control of Delta, or (ii) Delta destroyed evidence relevant to this case during a time it was obligated to preserve that evidence.

### 1.    Applicable Law

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Byrnie* v. *Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (citing *West* v. *Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  The Court may impose sanctions under Fed. R. Civ. P. 37(b)(2) when a party spoliates evidence in violation of a court order, or at the Court's discretion,

---

[14]    Plaintiff alleges that "complaint records" were spoliated (*see* Pl. Spol. 1), but asks for an adverse inference that "Ysabel provided a *written* complaint" (Pl. Spol. 12 (emphasis added)). As such, the Court assumes Plaintiff seeks an adverse inference due to Delta's spoliation of the written complaint.  However, as discussed in the remainder of the Opinion, Plaintiff is not entitled to any adverse inference because Delta had no obligation to retain the evidence until the Complaint was filed.

even if there is not a court order in place.  *See West*, 167 F.3d at 779 (citing

*Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 43-45 (1991)).

If evidence was spoliated, the Court may impose a broad range of sanctions,

with dismissal being the most "extreme" and reserved only for cases in which "there

is a showing of willfulness, bad faith, or fault on the part of the sanctioned party."

See *West*, 167 F.3d at 779 (citing *Jones* v. *NFTA*, 836 F.2d 731, 734 (2d Cir. 1987)

and *John B. Hull, Inc.* v. *Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d

Cir. 1988) (noting that dismissal is a "drastic remedy" that "should be imposed only

in extreme circumstances, usually after consideration of alternative, less drastic

sanctions" (internal citation and quotation marks omitted))).  The Court may also

choose to grant an adverse inference against the spoliating party, a remedy that is

also "extreme" and should "not be imposed lightly."  *Treppel* v. *Biovail Corp.*, 249

F.R.D. 111, 120 (S.D.N.Y. 2008) *(*citing *Zubulake* v. *UBS Warburg LLC*, 220 F.R.D.

212, 220 (S.D.N.Y. 2003)).

2.      **Application**

a.      **The Evidence Was Not Spoliated**[15]

Even if a party's culpability is established, for sanctions to be imposed, the

Court must find that relevant evidence "actually existed and was destroyed."

*GenOn Mid-Atl., LLC* v. *Stone & Webster, Inc.*, 282 F.R.D. 346, 357 (S.D.N.Y. 2012)

*aff'd*, No. 11 Civ. 1299 (HB), 2012 WL 1849101 (S.D.N.Y. May 21, 2012) (citing

*Orbit One Commc'ns* v. *Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010)).  Put

somewhat differently, a plaintiff is not entitled to an adverse inference based upon a

defendant's nonproduction of nonexistent evidence.  *Valenti* v. *Penn Mut. Life Ins.*

*Co.*, 850 F. Supp. 2d 445, 453 (S.D.N.Y. 2012), *aff'd*, 511 F. App'x 57 (2d Cir. 2013)

(summary order); *Riddle* v. *Liz Claiborne, Inc.*, No. 00 Civ. 1374 (MBM) (HBP),

2003 WL 21976403, at *2 (S.D.N.Y. Aug. 19, 2003) (finding that spoliation sanctions

---

[15]     Plaintiff candidly admits that he brings the instant motions because his expert cannot "render an opinion on the issues central to the litigation," and because the record is "devoid of crucial pieces of evidence."  (*See* Pl. Spol. at 1).  The fact that a plaintiff's claims are not ultimately borne out by the evidence developed in discovery does not, however, warrant the imposition of spoliation sanctions as some sort of consolation prize.  Plaintiff's Motion for Spoliation Sanctions is particularly troubling inasmuch as he never raised any of the alleged "discovery abuses" with the Court over the nearly eight months of fact discovery, during which time the Court held two conferences.

Plaintiff's Motion for Spoliation Sanctions is particularly troubling inasmuch as he never raised any of the alleged "discovery abuses" with the Court over the nearly eight months of fact discovery, during which time the Court held two conferences.

While the Court need not reach whether the motion is timely, it notes that these issues should have been raised promptly during discovery, and not in a motion for spoliation after discovery has closed.  *See Mohammed* v. *Delta Air Lines, Inc.*, No. 08 Civ. 1405 (FB) (JMA), 2011 WL 5553827 (E.D.N.Y. June 8, 2011), *rep. and rec. adopted sub nom. Mohammed* v. *Delta Airlines, Inc.*, No. 08 Civ. 1405 (FB) (JMA), 2011 WL 5554269 (E.D.N.Y. Nov. 15, 2011) (finding spoliation motion untimely where the existence of a video camera and any discovery issues surrounding the possible videotape should have been raised in discovery, and not in a motion for spoliation); *Tri-Cnty. Motors, Inc.* v. *Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 178 (E.D.N.Y. 2007) (where alleged spoliation issues were not brought to the court's attention during discovery, it was "quite simply, too late to raise them"); *Glenn* v. *Scott Paper Co.*, Civ. A. No. 92–1873, 1993 WL 431161, at *17 n.3 (D.N.J. Oct. 20, 1993) (finding plaintiff's motion for sanctions untimely when no motion to compel or for sanctions had been brought during discovery, and accusations were first leveled while defending summary judgment motion); *see also Ali* v. *A&G Co., Inc.*, 542 F.2d 595, 596 (2d Cir. 1976) (holding that plaintiffs should have advised the court of defendant's failure to engage in discovery during discovery, and not on the eve of trial).

were not appropriate where plaintiff did not prove that evidence actually existed); *see also Farella* v. *City of New York*, No. 05 Civ. 5711 (NRB), 2007 WL 193867 (S.D.N.Y. Jan. 25, 2007) (same).[16]

Here, Plaintiff has not proven that the allegedly spoliated evidence existed. First, with respect to the Safety Check records, discovery revealed that the GSE mechanic is not required to fill out the "Post-Accident Safety Checklist," and that generally the information in the form is used only as a guide.  (McNamara Aff. ¶ 5). A GSE mechanic testified that many mechanics do not even use the checklist because they are so familiar with the steps of the safety check.  (DeVito Tr. 62). Other than the fact that the blank form exists, Plaintiff offers no evidence to prove that a form was actually filled out after Plaintiff's accident.  (McNamara Tr. 37, 102, 109).  In any event, the Vehicle was not actually repaired.  (Tejada Tr. 62). Had a form been filled out, therefore, it would likely have shown that there was nothing that needed to be repaired, a fact weighing in Delta's favor.

Second, Plaintiff has not demonstrated that the written Ysabel complaint actually existed.  Plaintiff argues that "Mr. Ysabel testified that after discovering the unintended acceleration defect, he filled out a form, and brought the Vehicle to the mechanics responsible," and that "[d]espite Delta's own thirty-day record retention policy, Delta has failed to produce any of the pre-accident complaint records written by Aramark."  (Rutsky Spol. Aff. ¶¶ 35-37).  This assertion is

---

[16]   Plaintiff states throughout his moving papers that Delta has "outright admitted" that they have either lost or destroyed the five categories of evidence Plaintiff seeks.  (*See* Pl. Spol. at 2, 5, 6).  After carefully reviewing the record, the Court finds no such admissions, outright or otherwise.   To the contrary, Plaintiff's assertions are contradicted by the voluminous supporting materials submitted by the parties, and are vigorously disputed by Delta.

refuted by the record.  Ysabel did not testify that he provided a written complaint to

Delta, and, indeed, inconclusively testified as to whether he completed an Aramark

POI at all.  Ysabel's supervisor testified that there were *no* complaints made by

anyone at Aramark about the Vehicle's acceleration problems prior to the accident.

(Tejada Tr. 51-52).[17]

 Third, far from having been destroyed, the pre-accident maintenance records

were already produced to Plaintiff.  Specifically, Delta produced two years' worth of

maintenance records for the Vehicle.  The Department Manager of Delta's GSE

department at JFK, as well as a line mechanic employed by Delta at JFK, also

submitted sworn affidavits and testified that (i) Delta mechanics do not generate

contemporaneous handwritten records, and (ii) all work performed on Delta vehicles

is directly entered into and contained in the EBIS system.  (McNamara Aff. ¶ 4;

DeVito Aff. ¶ 2).[18]

 In contending otherwise in his Motion for Spoliation Sanctions, Plaintiff

grossly misstates DeVito's testimony.  DeVito testified that GSE creates "no written

records" other than turnover sheets (DeVito Tr. 31), but Plaintiff cites that very

---

[17] Discovery also clarified that Delta and Aramark maintained separate POI forms and separate retention periods for those forms, *see supra* at 4.  Delta was not responsible for maintaining Aramark's POI forms, which are the forms that would have been provided to Ysabel.  Neither Aramark nor Delta have any record of Ysabel's complaint, and Delta has produced a sworn affidavit attesting to the fact that the Excel spreadsheet produced to Plaintiff constitutes the entirety of the EBIS records for the Vehicle for the two years prior to the accident.  (McNamara Aff. ¶ 3, 6).

[18] Plaintiff states that the EBIS records produced by Delta are incomplete (Rutsky Spol. Aff. ¶ 44), and attaches a printout of the Excel spreadsheet as proof (Rutsky Spol. Ex. R).  However, as Defendant explained in its moving papers (and apparently also during discovery), the records must be viewed in Excel in order to properly read the spreadsheet.  (Crowley Spol. Aff. ¶ 10).  Printing the spreadsheet may cause the records to appear incomplete.  Defendant has included, for ease of reference, the exact work order numbers that correspond to the work performed on the Vehicle.  (*Id.*).

page of the transcript as support for his assertion that "[a]ccording to Mr. DeVito, Delta also prepares computerized records with information extrapolated from the handwritten contemporaneous records" (Rutsky Spol. Aff. ¶ 43). At best, Plaintiff has mistakenly conflated GSE's turnover sheets, which are handwritten and are retained for 30 days, with all other maintenance records, which are not handwritten and are maintained in EBIS. The difference between these records was addressed extensively in the DeVito and McNamara depositions and affidavits, and need not be rehashed here.

Fourth, Plaintiff has not proven that the Aramark report is within Delta's custody or control. Plaintiff's supervisor, Yaskada Tejada, testified that an Aramark report would normally be prepared following an accident and provided to Delta, but that she did not prepare a report following Plaintiff's accident and did not know who did. (Tejada Tr. 47). Given that Tejada admittedly had no personal knowledge of a complaint prepared following the accident, her testimony establishes only what Aramark procedures would have been, not what actually happened. (*Id.* 47-48). Plaintiff has at most proven that Aramark possessed a report, but Plaintiff has already subpoenaed Aramark, which advised that it had no record of a report related to Plaintiff's accident. (Rutsky Spol. Ex. Q). While "[i]t is settled law that a party must produce not only all documents in its possession, but also all documents within its practical control," Plaintiff has failed to prove that the Aramark report was within Delta's custody or control. *GenOn Mid-Atl.*, 282 F.R.D. at 356.

Fifth, Plaintiff has not proven that any video of the accident was ever in Delta's custody or control, or that it was ever viewed by any Delta employee.

Tejada, an Aramark employee, testified that there was a Delta camera in the air traffic control tower at the time of the accident. (Tejada Tr. 58-59). On the day of the accident, Tejada spoke with Caroline Garcia, an Aramark employee who worked in the air traffic control tower; Garcia supposedly related to Tejada that she (Garcia) had viewed the video and "the truck like jumped, dumping the sodas and the two bodies out of the truck." (Tejada Tr. 60).

Plaintiff elected not to depose Garcia, nor has he offered any evidence that Garcia viewed a video captured by Delta's camera, or that Delta even owned one of the cameras in the air traffic control tower. It is reasonable to assume that the air traffic control tower at JFK has a number of different cameras that capture the tarmac, some of which may be owned by other airlines or by the Port Authority itself. Thus, setting aside the facts that Tejada's testimony constitutes double hearsay, and that Plaintiff has offered no additional evidence in support of Tejada's allegations, Plaintiff has at most proven that an Aramark employee (but no Delta employee) viewed the video. Delta, for its part, states that it does not possess any video of the accident, and, furthermore, that Plaintiff never requested any such video during discovery. (Def. Spol. Opp. at 5; Crowley Spol. Aff. ¶ 18).

### b.     Plaintiff Is Not Entitled To Any Adverse Inferences

Even assuming *arguendo* that any of the five categories of evidence existed and was spoliated, Plaintiff has failed to demonstrate that Delta had an obligation to preserve the evidence at the time of the accident. "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the

time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.* v. *DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted) (citing *Byrnie* v. *Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)).

With respect to a party's obligation to preserve evidence, the Second Circuit has held that:

> In order for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed. This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation — most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.

*Kronisch* v. *United States*, 150 F.3d 112, 126 (2d Cir. 1998) (internal quotation marks and citations omitted) (quoting *Turner* v. *Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72-73 (S.D.N.Y. 1991)). This inquiry is assessed on a case-by-case basis. *Fujitsu Ltd.* v. *Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citing *United States* v. *Grammatikos*, 633 F.2d 1013, 1019-20 (2d Cir. 1980)).

Plaintiff argues that Delta had an obligation to preserve evidence because it was on notice of the possibility of litigation as of the date of the accident. (Pl. Spol. at 5-7.) However, there are two instances at which Delta could have been deemed to be aware of the accident, and at neither point did Delta have notice that litigation was likely. The first instance is during the accident itself, which Plaintiff claims

was witnessed by Cosmo Cruz, a Delta ramp agent, and captured by Delta's video camera.  As discussed *supra*, Cruz has no recollection of the accident, and Plaintiff has not proven that any Delta employee viewed the video of the accident.  (Cruz Tr. 11-13).  Moreover, it is unlikely that a witness to the accident would be able to discern whether the Vehicle or Ysabel caused the rapid acceleration — unless that witness was focused only on Ysabel's foot — since the Vehicle's movement would likely appear the same due to either cause.[19]

The second instance is when Delta took control of the Vehicle after the accident.  Delta GSE mechanic Phil DeVito drove the Vehicle from the accident site to the garage, but observed that "nothing was wrong" with the Vehicle.  Even so, DeVito followed Delta and Port Authority procedure and made an entry into EBIS noting Ysabel's account of the accident, and requesting a safety check.  The safety check was performed and there were no repairs made to the Vehicle.  The Vehicle similarly passed the Port Authority inspection and was placed back into service the next day.

Plaintiff cites a number of factually inapposite cases in arguing that Delta had an obligation to preserve evidence because their Vehicle was involved in an accident.  (Pl. Spol. at 3 & n.1).  *See, e.g.*, *Siggelko* v. *Kohl's Dep't Stores, Inc.*, No. 06 Civ. 2281 (JS) (WDW), 2009 WL 750173 (E.D.N.Y. Mar. 17, 2009) (defendant was on notice of litigation where plaintiff slipped and fell on ice in defendant's parking lot,

---

[19]    For the reasons discussed in n.4 *supra*, it was in Ysabel's interest to blame the accident on a mechanical malfunction because he, Plaintiff, and Cisneros were all in violation of a number of Port Authority, Aramark, and Delta policies at the time of the accident.  Ysabel was also aware of the fact that he would been subject to discipline, including suspension, if his operation of the Vehicle was found to have been in violation of Aramark procedures and had caused injuries to his co-workers.  (Ysabel Tr. 60; Tejada Tr. 81).

and defendant conducted a post-accident investigation that included taking photographs and preparing an accident report); *Houlihan* v. *Marriott Int'l, Inc.*, No. 00 Civ. 7439 (RCC), 2003 WL 22271206 (S.D.N.Y. Sept. 30, 2003) (where soap dish fell on plaintiff in his hotel room, hotel was on notice of litigation due to "steps the hotel took to document the incident, including preparing an accident report for the Office of Loss Prevention, interviewing the maid about the condition of the soap dish, and taking photographs of the accident scene").

Here, the only post-accident "investigation" that Delta conducted was a safety check mandated by Port Authority and Delta policy.  In contrast to a store or hotel requiring documentation of a guest's injury or accident in preparation for litigation, Delta and the Port Authority conducted a *safety* check to ensure that the Vehicle was *safe* to operate on the tarmac of JFK, and found that it was.  Delta took no steps to prepare for litigation, investigate Ysabel's claims, or document Baez's injuries, because it did not have notice that litigation was likely.  The accident did not occur on premises solely under Defendant's control, like a hotel or a store, where a defendant's potential liability is clear.  This accident involved only Aramark employees, and the driver's account of the Vehicle's mechanical problems was contradicted by two separate mechanical inspections that uncovered no problems with the Vehicle.

Since the Court has found that the evidence was not spoliated, and even if it were, Delta was not obligated to preserve the evidence, it is not necessary to reach the issues of Delta's state of mind and the relevance of the evidence to Plaintiff.

Plaintiff is not entitled to any spoliation sanctions and, accordingly, his motion is denied.[20]

## CONCLUSION

For the reasons discussed herein, Plaintiff's motion to amend is DENIED. The Clerk of Court is directed to terminate Docket Entry 30.  Plaintiff's motion for spoliation sanctions is also DENIED.  The Clerk of Court is directed to terminate Docket Entry 33.

SO ORDERED.

Dated: September 18, 2013
      New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[20]   Plaintiff argues that Defendant's bad faith is shown through a "pattern of discovery abuses." (Pl. Spol. at 1).  While it is not necessary or even expedient for the Court to wade into these purported abuses at this late date, it is worth noting that Plaintiff's assertions are unsupported by the record in the following respects: (i) Delta reasonably limited, and did not withhold, the maintenance records to six months prior to the accident, and later produced a full two years' worth of maintenance records; (ii) Delta did not withhold deponents Cruz and Tejada, and was not aware that they were employed by Delta or its subsidiary until Plaintiff notified Defendant at the January 16, 2013 conference (while making clear that Plaintiff was "not suggesting Delta knew about this" (Jan. 16 Tr. 5)); (iii) Delta produced adequate Rule 30(b)(6) witnesses in response to Plaintiff's broad request; and (iv) Delta reasonably instructed its witnesses not to answer questions in depositions pursuant to previous agreements between the parties.