USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  April 11, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
: 
FRANCIS BAEZ,                                           :
:
                          Plaintiff,        :        12 Civ. 3672 (KPF)
:
          v.                                           :        OPINION AND ORDER
:
DELTA AIRLINES, INC.,                            :
:
                          Defendant.       :
:
------------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

On January 3, 2011, Plaintiff Francis Baez was injured on the tarmac of

John F. Kennedy International Airport ("JFK") when he fell out of a vehicle that

was owned and maintained by Defendant Delta Airlines, Inc.  Plaintiff initiated

this action in New York State Supreme Court on April 10, 2012, alleging that

Delta was negligent in its ownership, repair, maintenance, upkeep, servicing,

and/or inspection of that vehicle.  Delta removed the action to this Court on

May 9, 2012, and now moves for summary judgment.  Because Plaintiff has

failed to identify a genuine issue of material fact concerning his claim of

negligence, Defendant's motion is granted.[1]

---

[1]     Rosaura Cabrera, Plaintiff's wife, also brought claims for deprivation of services as a
        result of Plaintiff's injuries.  Cabrera's claims were voluntarily dismissed on November
        26, 2012.  (Dkt. #10).

# BACKGROUND[2]

The Court assumes familiarity with the facts and procedural history set forth in its prior decision denying Plaintiff's motions for spoliation sanctions and for leave to amend the complaint, *Baez* v. *Delta Airlines, Inc.*, No. 12 Civ. 3672 (KPF), 2013 WL 5272935, at *1-4 (S.D.N.Y. Sept. 18, 2013), as well as the Court's rulings therein.  For convenience, the particular facts relevant to this motion are set forth below.

## A.     The January 3, 2011 Accident

In January 2011, Plaintiff was employed at JFK by Aramark Aviation Services Limited Partnership ("Aramark").  (Def. 56.1 ¶ 2).  Delta had engaged Aramark, pursuant to the terms of an Airport Master Services Agreement (the "Contract"), to service Delta aircraft at JFK.  (*Id.* at ¶ 6).  Under the terms of the Contract, Aramark was permitted to use Delta's vehicles in order to service the

---

[2]     The facts stated herein are drawn from the parties' submissions in connection with the instant motion, including Defendant's 56.1 Statement ("Def. 56.1"), and Plaintiff's responses thereto ("Pl. 56.1 Response"); Plaintiff's 56.1 Counterstatement ("Pl. 56.1"), and Defendant's responses thereto ("Def. 56.1 Reply"); the exhibits attached to the Declaration of Michael J. Crowley ("Crowley Decl."); and the exhibits attached to the Declaration of Jordan Rutsky ("Rutsky Decl.").  References to individual deposition transcripts or affidavits will be referred to as "[Name] Tr." or "[Name] Aff."  For convenience, Defendant's opening brief will be referred to as "Def. Br"; Plaintiff's opposition brief as "Pl. Opp."; and Defendant's reply brief as "Def. Reply."

Citations to a party's 56.1 Statement incorporate by reference the documents cited therein.  Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent … controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

2

aircraft, but could return them to Delta if and when maintenance or repairs were needed.  (*Id.* at ¶ 8; Pl. 56.1 Response ¶¶ 8, 9; Pl. 56.1 ¶ 31).

On January 3, 2011, Plaintiff and two of his Aramark co-workers, Victoriano Ysabel and Fernando Cisneros, were servicing Delta aircraft on the JFK tarmac.  (Def. 56.1 ¶¶ 3, 7, 15, 16).  Their shift began around 1:00 p.m., when Plaintiff and his co-workers were assigned the use of a box truck, which had two seats with seatbelts in the front, and no seats or seatbelts in the rear cargo compartment.  (Pl. 56.1 Response ¶ 29; Ysabel Tr. 38-39).  Plaintiff and his co-workers used the vehicle throughout the day without incident.  (Ysabel Tr. 46).

At approximately 6:30 p.m., Plaintiff and his co-workers had just finished servicing a plane.  (Ysabel Tr. 46; Baez Tr. 4).  They were running late and were rushing.  (Ysabel Tr. 46).  Ysabel, the driver, notified Plaintiff and Cisneros that he intended to move the vehicle.  (Def. 56.1 ¶ 20).  Plaintiff and Cisneros were aware that Ysabel was going to move the vehicle, and decided to sit in the rear compartment; Ysabel was aware they were sitting in the rear compartment.  (*Id.* at ¶¶ 15, 20). [3]  Plaintiff was sitting on a cardboard box that was not secured in

---

[3]      Plaintiff, Cisneros, and Ysabel were in violation of a number of Port Authority, Aramark, and Delta policies at the time of the accident.  (*See generally* Ysabel Tr. 60-61; Tejada Tr. 81).  Specifically, it was a violation of Port Authority and Aramark rules to move the vehicle while Plaintiff and Cisneros were in the rear compartment.  (Ysabel Tr. 25, 45).  Ysabel should have used either Plaintiff or Cisneros as a guide to move the vehicle near aircraft.  (Tejada Tr. 79).  Ysabel was aware that he was not permitted to operate the vehicle with passengers in the rear compartment; however, Ysabel testified that the vehicle, as well as the two-man crew, were "assigned" to him, and there is no evidence that Ysabel chose the vehicle or the two-man crew.  (Def. 56.1 ¶ 29; Pl. 56.1 Response ¶ 29; Def. 56.1 Reply ¶ 29).  Also, a blue curtain on the back of the vehicle was open at the time of the accident, in violation of Aramark and Port Authority rules.  (Ysabel Tr. 47-48; Baez Tr. 47).

any way.  (Def. 56.1 ¶¶ 15, 29; Pl. 56.1 Response ¶ 29; Def. 56.1 Reply ¶ 29; Baez Tr. 40).  The curtain in the rear compartment, which is designed to prevent items from falling out of the truck onto the tarmac, was open.  (Def. 56.1 ¶ 16; *see generally* Ysabel Tr. 47-48).  Ysabel testified that when he shifted the vehicle's gear from park into drive, "the truck just took off fast."  (Pl. 56.1 ¶ 36; Ysabel Tr. 18).  As a result, Plaintiff and Cisneros "fell" out of the vehicle; Plaintiff suffered a fractured right elbow, as well as injuries to his right foot, ankle, and ribs.  (Baez Tr. 10).

## B.    Ysabel's Pre-Accident Complaint about the Vehicle

Ysabel testified that he had experienced unintended acceleration with the vehicle prior to the day of the accident; his deposition testimony on that matter, however, is both confusing and inconsistent.  For one thing, Ysabel was less than clear in defining the nature (and, by extension, the cause) of the problem: He first suggested that the problem was with the vehicle's gas pedal; he testified that several days prior to the accident, the vehicle "had problems … with the accelerator … [t]he accelerator would get stuck."  (Ysabel Tr. 14).  However, Ysabel also suggested that the problem was with the vehicle's transmission, explaining that "when you put it in the parking shift, it would continue to accelerate and that's what happened on the day of the accident."  (*Id.* at 15).

Similar problems beset counsel's efforts to have Ysabel compare what he had observed a few days before the accident with what he had observed on the

---

Ysabel acknowledged that he would been subject to discipline, including suspension, if his operation of the vehicle were found to have been in violation of Aramark procedures and had caused injuries to his co-workers.  (Ysabel Tr. 60; Tejada Tr. 81).

date of the accident. At times, Ysabel suggested that the unintended acceleration he had complained of a few days earlier was "the same" as the unintended acceleration he experienced on the day of Plaintiff's accident. (Pl. 56.1 ¶ 37). For instance, in response to questioning from Plaintiff's counsel, Ysabel stated that on the day of the accident, "the truck did the same thing that I had previously reported and it got stuck, the accelerator got stuck. That's exactly what happened." (Ysabel Tr. 19-20; *see also id.* at 14-15). Elsewhere in his deposition, however, Ysabel clarified that what happened with the vehicle on the day of the accident was meaningfully different. Of note, Ysabel explained to Defendant's counsel that, "I put the truck in drive [] I let go of the brake, [and] the truck was already going." (*Id.* at 52; *see also id.* at 18 (noting that when he shifted into drive "the truck just took off fast"), 53 (noting that the vehicle was "already accelerating" when he took his foot off of the brake)). Ysabel further testified that on the day of the accident, "[w]hen I started the truck [it] jumped very fast, [so] I attempted to put the brake on, but because it was stuck to the accelerator, the option I took was to turn off the engine and that's what I did." (*Id.* at 57).

Seeking clarification as to the similarity *vel non* between the two incidents to which Ysabel had testified, counsel for Defendant asked Ysabel several times whether Ysabel had applied any pressure to the gas pedal immediately prior to the accident. (Ysabel Tr. 49-53). Ysabel initially refused to answer, claiming that he could not answer the question, and that "[t]here are questions that have no answers." (*Id.* at 51). Ysabel ultimately responded, "I don't think I put the

5

foot on the accelerator because the truck just went out very fast." (*Id.* at 52; *see also id.* at 53).

Ysabel testified that he reported the vehicle's pre-accident episode of unintended acceleration to Delta.  More to the point, Ysabel claimed that after that incident, he brought the vehicle to "the shop" and "reported that the truck had problems with the accelerator." (Ysabel Tr. 19).[4]

Delta's Ground Support Equipment ("GSE") department at JFK is responsible for performing all vehicle maintenance and repair on Delta vehicles. (Def. 56.1 ¶ 11; Pl. 56.1 Response ¶ 11; Def. 56.1 Reply ¶ 11).  Delta's standard practices provide that if and when a vehicle is returned to the GSE department for repairs, any maintenance or repairs performed on that vehicle are recorded in Delta's electronic records system, which is known as EBIS.  (Def. 56.1 ¶ 12). Accordingly, any complaints made to Delta about its vehicles should be recorded in EBIS.  (*Id.* at ¶ 13; Pl. 56.1 Response ¶ 13; Def. 56.1 Reply ¶ 13).

There are no complaints in EBIS regarding unintended acceleration for the vehicle for the two years preceding Plaintiff's accident.  (Def. 56.1 ¶ 14). Yaskada Tejada, Ysabel's immediate supervisor at Aramark, testified that she

---

[4]     Ysabel's testimony about this complaint is also somewhat inconsistent.  When asked directly "[d]id you have to fill out any forms related to the issue with the accelerator a couple of days before the accident?," Ysabel responded, "[t]hat day they took it to the shop, I didn't fill out any forms, but I did let them know what the problem was with the truck." (Ysabel Tr. 15-16).  Ysabel did not know the name of the mechanic with whom he spoke, whether the mechanic filled out a form reflecting his complaint, what was done to the vehicle, or how long it was in the mechanic's shop.  (*Id.*).

Later in his deposition, in response to a question regarding whether he completed an Aramark inspection form, Ysabel stated that "I don't recall exactly what I wrote.  I do know that the truck was taken to the shop and it was reported that it was accelerating on its own." (Ysabel Tr. 56).  Neither Delta nor Aramark have any records of Ysabel's complaint.  (*See* Tejada Tr. 36; EBIS Records).

was aware of no complaints made by anyone at Aramark to anyone at Aramark or Delta about the vehicle's alleged acceleration issue prior to the accident. (*Id.* ¶ 28; Tejada Tr. 51-52). Similarly, Aramark does not possess any records of Ysabel's alleged complaint regarding the unintended acceleration. (Def. 56.1 ¶ 27). There is no evidence Delta performed any repairs or maintenance on the vehicle following Ysabel's complaint; to the contrary, Delta's records indicate that the last service on the vehicle occurred more than one week before the accident, and involved the repair of broken headlights. (Crowley Decl., Ex. L, Work Order JFK0578756).[5] Nonetheless, Ysabel testified that the vehicle was in "the shop" for two to three days, and that Plaintiff's accident occurred on the first day the vehicle was released back into service. (Ysabel Tr. 14).

## C.    Post-Accident Mechanical Inspections

Immediately after the January 3, 2011 incident, Delta mechanic Phil DeVito drove the vehicle from the accident site to the GSE garage, and observed that there was "nothing wrong" with the vehicle, particularly with the accelerator or the brakes. (DeVito Tr. 27). In an affidavit submitted in support of this motion, DeVito avers that upon arriving at the scene of the accident, he

---

[5]    Plaintiff asks the Court to take the "absence of a record" in the light most favorable to Plaintiff in order to find that "Delta failed to address the accelerator issue after receiving the complaint from Mr. Ysabel." (Pl. Opp. 5). Such a request is curious, given that the Court previously denied Plaintiff's request for an adverse inference, having found that "Plaintiff ha[d] not demonstrated that the written Ysabel complaint actually existed." *Baez*, 2013 WL 5272935, at *10; *supra*, n.4. More importantly, the "absence of a record" falls easily into the category of "[c]onclusory allegations, conjecture, and speculation [which] are insufficient to create a genuine issue of fact." *Kerzer* v. *Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citing *D'Amico* v. *City of N.Y.,* 132 F.3d 145, 149 (2d Cir. 1998)).

But even accepting Ysabel's testimony as true, and even taking the absence of a record to mean that Delta performed no repairs on the vehicle, Plaintiff has nonetheless failed to allege a prima facie claim, having failed to put forth sufficient (indeed, any) evidence regarding the cause of the accident, for the reasons discussed throughout this Opinion.

7

was told that the driver had complained of the gas pedal "sticking." (DeVito Aff. ¶ 3). Accordingly, DeVito performed a series of preliminary evaluations on the vehicle at the scene of the accident, aimed at evaluating those causes of unintended acceleration with which DeVito was familiar. (*Id.* at ¶ 4). DeVito examined the area around the gas pedal for debris; he found none. (*Id.*). DeVito examined the gas pedal to determine whether it was sticking; it was not. (*Id.*). DeVito checked the brake pedal to determine whether it was operating normally; it was. (*Id.*). Lastly, DeVito checked whether the transmission was faulty as he shifted the vehicle into gear; there was no unintended acceleration. (*Id.*). DeVito drove the Vehicle back to the GSE shop, and did not experience any unintended acceleration while doing so. (*Id.*).

DeVito made an entry in EBIS noting that a post-accident safety check was needed, and that the "vehicle [was] involved in accident, driver claims vehicle jumped into gear and accelerated." (DeVito Tr. 27; EBIS Records). DeVito left at the end of his shift; another GSE mechanic performed a post-accident safety check shortly thereafter, and made no repairs to the vehicle. (Def. 56.1 ¶ 23; DeVito Tr. 27).

As is standard protocol when an accident at JFK results in injury, a representative from the Port Authority of New York and New Jersey (the "Port Authority") removed the license plates from the vehicle on the day of the accident, pending a final safety inspection by the Port Authority. (Syska Tr. 16-17). The vehicle passed a Port Authority safety check the following day, and

8

was placed back into service with no repairs.  (Def. 56.1 ¶ 24; McNamara

Tr. 43-45).

**D.     The Instant Action**

Plaintiff initiated this action in April 2012, alleging that Delta was

negligent in its ownership, repair, maintenance, upkeep, servicing, and/or

inspection of the vehicle.  (Am. Compl. ¶¶ 12-15).

The parties proceeded to discovery for approximately one year.  Plaintiff

retained Douglas J. Rowland, an engineer, to offer an expert opinion regarding

whether Delta had been negligent and whether any such negligence had caused

Plaintiff's accident.  (Def. 56.1 ¶ 26).  However, Rowland concluded that there

was no evidence upon which he could base an opinion, to a reasonable degree

of expert certainty, that Delta's negligence caused Plaintiff's accident.  (*Id.*).  His

report noted as much, and also raised a new theory, namely, that Delta's failure

to provide seatbelts in the rear compartment was negligent.  (*Id.*).

On April 30, 2013, Plaintiff served Defendant with his expert disclosure

and report.  *See Baez*, 2013 WL 5272935, at *3-4.  On May 15, 2013, Defendant

requested an extension of time within which to serve its own responsive expert

disclosure with respect to liability, noting that Plaintiff's expert report

"provide[d] several opinions which [went] beyond, and [were] different from, the

claims made by plaintiff in the Complaint, and therefore were completely

unexpected by Delta."  *Id.* at *3.  In particular, Defendant alleged that Plaintiff

was asserting for the first time that Delta had failed to provide enough seats in

9

the vehicle, and that Delta knew the vehicle was routinely used by three-person crews in violation of Delta, Aramark, and Port Authority policies.  *Id.*

As a result, Judge Paul G. Gardephe, the United States District Judge then assigned to the case, notified Plaintiff that he had asserted new allegations, and that if Plaintiff intended to proceed on those allegations, it would be "necessary" for Plaintiff to move to amend the Complaint.  (June 6 Tr. 8-12).  The case was reassigned to the undersigned shortly thereafter.  (Dkt. #24).

On June 28, 2013, Plaintiff moved for spoliation sanctions and to amend the Complaint.  (Dkt. #30, 33).  Plaintiff alleged that Delta had spoliated a number of categories of discovery materials, including written records of Ysabel's pre-accident vehicle complaint.  In his moving papers, Plaintiff candidly admitted that he brought the motions because his expert could not "render an opinion on the issues central to the litigation," and because the record was "devoid of crucial pieces of evidence."  (*See* Pl. Mot. Spol. 1 (Dkt. #35)).

On September 18, 2013, the Court denied both of Plaintiff's motions because Plaintiff had demonstrated neither good cause for the amendment, nor any spoliation of evidence by Delta.  *Baez*, 2013 WL 5272935, at *5-13.  In so holding, and in response to Plaintiff's stated purpose in bringing the motions, the Court noted that "[t]he fact that a plaintiff's claims are not ultimately borne out by the evidence developed in discovery does not [] warrant the imposition of spoliation sanctions as some sort of consolation prize."  *Id.* at *9 n.15.

10

The Court held a pretrial conference on October 3, 2013, in order to discuss the remaining expert discovery deadlines.  (Dkt. #48).  Plaintiff's counsel conceded that his export report was not "useful," and promised to notify the Court promptly as to whether he intended to submit any expert testimony. (Oct. 3 Tr. 19-21).  The Court then set a schedule for summary judgment.  (Dkt. #49).

By letter dated October 8, 2013, Plaintiff's counsel notified the Court that not only did he intend to introduce expert testimony, but he also sought to amend his expert report.  (Dkt. #50).  Specifically, the proposed amendment stated:

> Accepting the testimony of [Victoriano Ysabel] that there was an acceleration defect with the vehicle that he presented to Delta maintenance personnel for corrective action, it is the standard practice in fleet vehicle maintenance that Delta should have removed the vehicle from service until the defective condition was corrected.
>
> Delta should have performed a proper evaluation of the truck whereby they would have identified the defective condition and the cause thereof, and subsequently corrected the defect before returning the vehicle back into service.
>
> Delta's failure to repair or remove the defective truck from service created an unreasonably dangerous condition that was a cause of Baez's injury.
>
> Had Delta performed a proper inspection of the truck. and corrected the defect, Baez's injury would have been avoided.

(*Id.*).

The Court held a telephone conference with the parties on October 15, 2013.  At that conference, Plaintiff conceded that his "expert [could not] identify what the cause of the accident was," but that the expert now sought to introduce "a common sense type theory," namely, that Delta should not release a defective vehicle back into service without first repairing that defect.  (Oct. 15 Tr. 6).  After hearing argument from both parties, the Court denied Plaintiff's request to amend his expert report.  The Court noted that Plaintiff's expert had specifically and repeatedly averred to the Court that he could not render an opinion on the record before him, presumably in order to persuade the Court to permit amendment of the Complaint and reopening of the record.[6]  Yet once those motions were denied, Plaintiff's expert changed his mind, and now stated that he could render an expert opinion on the very same record; the Court was not swayed by the expert's conspicuous about-face.  (*Id.* at 21-26).  The Court found, in addition, that any amendment would prejudice Defendant, and that

---

[6]     In connection with Plaintiff's motions for sanctions and to amend, Plaintiff's expert had submitted a sworn affidavit that stated in relevant part:

- I am unable to determine the extent that Delta was notified and aware of the defective condition of the vehicle prior to the accident or to the extent to which Delta adequately remedied the defective condition.

- I am unable to opine, within a reasonable degree of expert certainty, as to whether Delta negligently maintained the subject vehicle such that it had a defect which caused the plaintiff's accident and/or negligently created the condition that caused plaintiff's accident when servicing the vehicle.

- I am unable to provide an opinion within a reasonable degree of expert certainty regarding whether Delta caused the accident by failing to identify and address a mechanical malfunction in the subject vehicle that caused unintended acceleration.

(Rowland Aff. ¶¶ 31, 43, 44 (Dkt. #34)).

the proposed amendment impermissibly speculated from the record.  (*Id.*).

Plaintiff withdrew his expert report and the parties proceeded thereafter to

motion practice.  (*Id.* at 27).

Defendant's motion for summary judgment was filed on November 8,

2013 (Dkt. #52); Plaintiff's opposition was filed on December 6, 2013 (Dkt. #57);

and the motion was fully briefed as of the filing of Defendant's reply on

December 20, 2013 (Dkt. #60).  On March 4, 2014, the Court ordered the

parties to submit supplemental letter briefing regarding the elements of

Plaintiff's negligence claim under New York law, a topic neither party had

briefed sufficiently in their motion papers.  (Dkt. #62).  The parties submitted

supplemental letter briefs on March 14, 2014.  (Dkt. #63, 64).  The Court now

considers Defendant's motion.

## DISCUSSION

### A.    Applicable Law

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all

the submissions taken together "show[] that there is no genuine issue as to any

material fact and the movant is entitled to judgment as a matter of law."  *See*

*Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence

of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A fact is

"material" if it "might affect the outcome of the suit under the governing law,"

and is genuinely in dispute "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."

*Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

## B.   Plaintiff's Negligence Claim Fails

### 1.   Negligence Generally

Plaintiff brings a claim in connection with Delta's alleged negligent ownership, repair, maintenance, upkeep, servicing, and/or inspection of the vehicle.  To make out a claim for negligence under New York law, a plaintiff must demonstrate (i) "the existence of a duty owed to him or her by the defendant"; (ii) "a breach of that duty"; and (iii) "injury resulting from the breach."  *Henry-Lee* v. *City of New York*, 746 F. Supp. 2d 546, 570 (S.D.N.Y. 2010) (citing *Solomon* v. *City of New York*, 66 N.Y.2d 1026, 1027 (1985)).[7]

The parties agree that Delta had a duty to effect maintenance and repairs on the vehicle in a non-negligent manner.  (*See* Def. Mar. 14 Letter 1).  More to the point, Delta owed a duty "to use reasonable care in repairing and inspecting the product for defects and in repairing the defects so that the product after repair is reasonably safe for its intended or foreseeable uses."  (Pl. Mar. 14 Letter 1 (citing New York Pattern Jury Instructions § 2125B)).  Put somewhat differently, in order to tie Delta's negligence to the accident, Plaintiff must establish that Delta had notice of the defect that caused the unintended acceleration, and that Delta's failure to repair that defect caused Plaintiff's injuries.

---

[7]   The parties agree that New York State law applies to Plaintiff's claims.  (Def. Br. 8; Pl. Opp. 4).

Because negligence cannot simply presumed from the mere existence of an injury, "where there are several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which defendant was responsible." *J.E.* v. *Beth Israel Hosp.*, 744 N.Y.S.2d 166, 170 (N.Y. App. Div. 2002) (internal citations omitted).

Accordingly, Plaintiff bears the initial burden of putting forth evidence sufficient to raise a triable issue of fact that the accident was caused by Delta's negligent maintenance or repair, and not by some other factor, such as driver error. While Plaintiff need not exclude every possible cause of the accident, his proof must tend to render "those other causes sufficiently remote or technical to enable a jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence." *J.E.*, 744 N.Y.S.2d at 169 (internal citation and quotation marks omitted); *see also Burgos* v. *Aqueduct Realty Corp.*, 92 N.Y.2d 544, 550 (1998) ("A plaintiff is not required to exclude every other possible cause, but need only offer evidence from which proximate cause may be reasonably inferred. Plaintiff's burden of proof on this issue is satisfied if the possibility of another explanation for the event is sufficiently remote or technical to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence." (internal citations and quotation marks omitted)); *cf. Bloomer* v. *Empire Forklift, Inc.*, 850 N.Y.S.2d 224, 226 (3d Dep't 2007) (noting that the proof "must be sufficient to permit a finding based on logical inferences from the record and not

upon speculation alone" (internal citations and quotation marks omitted)).
Plaintiff has failed to make this showing.

### 2. Plaintiff Has Failed to Submit Any Evidence as to the Cause of the Accident

First, Plaintiff has put forth no evidence as to the cause of the accident, as he must.  *See, e.g.*, *Velez* v. *Sebco Laundry Sys., Inc.*, 178 F. Supp. 2d 336, 341 (S.D.N.Y. 2001) (rejecting negligent maintenance claim where plaintiff did not "offer *any* evidence to support her assertions," such as "expert testimony or other evidence demonstrating that a reasonably prudent technician would have found the defect during a regularly scheduled inspection" (emphasis in original)); *Simon* v. *Nortrax N.E., LLC*, 941 N.Y.S.2d 706, 708 (2d Dep't 2012) (upholding jury verdict for plaintiff after trial on strict liability and negligent repair and maintenance claims, where plaintiff presented expert testimony attributing the accident to a "malfunction in the circuit that controlled the hydraulic pumps for the truck's brake system," and expert testified that "the only way for a mechanic to diagnose this problem would be to test the braking system with gauges, which the mechanics … had not done").  As noted *supra*, Plaintiff's proof need not exclude every possible cause, but it must render sufficiently remote those causes that are not related to Delta's negligence. Plaintiff has done no such thing.

Plaintiff attempts to discharge his burden in the first instance by borrowing from Ysabel's imprecise testimony.  Such testimony establishes, at best, that Ysabel turned in the vehicle to Delta complaining of unintended acceleration, and that after the vehicle was returned into service, it again

accelerated unintentionally.  Thus, Plaintiff claims, the accident was caused by unintended acceleration.  (*See* Pl. Opp. 5-6).  But the issue is not so simple. The undisputed record indicates that unintended acceleration is the effect of a mechanical defect, not a mechanical defect in and of itself.  (*See* DeVito Aff. ¶¶ 3-4).  For example, Delta cannot repair "unintended acceleration," but it can repair a faulty transmission that causes unintended acceleration.[8]

Plaintiff bears the burden of putting forth at least some evidence regarding the cause of the unintended acceleration, and whether it was and should have been discovered or repaired in a normal mechanical inspection. *See Stone* v. *866 3rd Next Generation Hotel, LLC.*, No. 99 Civ. 4780 (LTS) (KNF), 2002 WL 1977956, at *5 (S.D.N.Y. Aug. 27, 2002) (granting summary judgment on negligent maintenance claim, finding that "Plaintiff does not proffer evidence of a specific defect, much less that a reasonable inspection would have revealed such a defect."); *Nahar* v. *Socci*, 976 N.Y.S.2d 200, 202 (2d Dep't 2013) (overturning jury verdict for plaintiff where his expert's opinion regarding the defendant's negligent maintenance or repair was "speculative and unsupported by the record," and where "the plaintiff proffered no evidence that negligent

---

[8]       In his opposition, Plaintiff contends that he in fact identified a "defect [in the vehicle] that caused it to unintentionally accelerate, specifically the accelerator or gas pedal stuck." (Pl. Opp. 2).  The evidence on which Plaintiff relies, however, negates this putative defect.  For starters, Ysabel testified that prior to January 3, the vehicle accelerated unintentionally while it was in park.  *See* Background Sec. (B).  Yet on January 3, according to Ysabel, the vehicle accelerated while it was being shifted into drive.  *Id.*  More fundamentally, while Plaintiff relies heavily on Ysabel's testimony that the problem was an accelerator that stuck, he overlooks Ysabel's testimony that he (Ysabel) applied *no* pressure to the gas pedal immediately prior to the accident.  As Delta notes, it is difficult to reconcile testimony that a gas pedal "stuck," with testimony that no pressure was applied to the gas pedal.  (Def. Reply 3-4).

repair, as opposed to the passage of time, weather, or other factors, caused the alleged defective condition of the sidewalk").

DeVito's testimony — uncontroverted by Plaintiff — indicates that the vehicle was not suffering from any of the most common causes of unintended acceleration immediately after the accident: the transmission operated normally, there was no debris around the gas pedal, and the gas and brake pedals operated normally.  (DeVito Aff. ¶¶ 3-4).  Plaintiff cannot simply declare that the vehicle unintentionally accelerated and rest his case, even at the summary judgment stage.  Plaintiff's failure to come forward with any evidence as to any cause of the unintended acceleration that he cites as the cause of his accident, much less any evidence tending to render remote any cause other than Delta's negligence, is dispositive.

### 3. Plaintiff's Failure to Submit Expert Testimony Is Fatal to His Claim

Even setting aside the insufficiency of Ysabel's testimony, what is truly fatal to Plaintiff's claim is his failure to put forth any expert testimony.  To be sure, his decision not to do so is unsurprising, since his expert was unable to opine as to what caused the accident, *see* n.6, *supra*.  Unfazed, Plaintiff now contends that expert testimony is not needed because the issues in this action — among them, acceptable standards of commercial fleet maintenance and the mechanical causes of unintended acceleration — are within the common knowledge and experience of a jury.  The Court disagrees.  On the facts of this case, it is noteworthy that Plaintiff's expert was unable to opine as

19

to whether Delta's negligence caused Plaintiff's accident; a lay jury would necessarily be unable to make such a determination on the same record.

Under New York law, expert testimony is required where "'the subject-matter to be inquired about is presumed not to be within common knowledge and experience'" of the jury. *Fane* v. *Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (quoting *Meiselman* v. *Crown Heights Hosp.*, 285 N.Y. 389, 396 (1941)); *see Berk* v. *St. Vincent's Hosp. & Med. Center*, 380 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("[U]nless the alleged [breach of duty] falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case ...." (internal citation and quotation marks omitted)); *see also Conte* v. *Usalliance Fed. Credit Union,* No. 3:01 Civ. 463 (EBB), 2007 WL 3355381, at *4 (D.Conn. Nov. 8, 2007) ("New York courts have similarly held that expert opinion is generally necessary to evaluate the standard of care owed by other kinds of professionals, except where the jury is otherwise competent to evaluate whether the defendant has deviated from the standard of care." (collecting cases)); *Peretz* v. *Home Depot Inc.*, No. 08 Civ. 4106 (BMC), 2009 WL 4281486, at *2 (E.D.N.Y. Nov. 18, 2009) (same). Conversely, where a matter is "'within the experience and observation of the ordinary jurymen from which they may draw their own conclusions and the facts are of such a nature as to require no special knowledge or skill,'" expert testimony is not required. *Fane*, 927 F.2d at 131 (quoting *Meiselman*, 285 N.Y. at 396).

20

Plaintiff submits that an unknown mechanical defect caused the vehicle to accelerate while in park on one day, and that same defect caused the vehicle to accelerate while in drive on another day.  (Pl. Opp. 5-6; *see generally* Ysabel Tr. 14-20).  And even though three separate post-accident mechanical evaluations concluded that there was "nothing wrong" with the vehicle, Plaintiff contends that a reasonable mechanical evaluation by Delta would have uncovered this defect.  *See generally* Background Sec. C.  Thus, in order to find Delta liable, the jury would have to be familiar with (i) what would cause a vehicle to accelerate unintentionally, both while in park and in drive; (ii) commercial fleet maintenance and evaluation procedures; and (ii) whether that defect would be discoverable upon such an evaluation.  The Court has no reason to believe — and, in fact, seriously doubts — that a lay jury would be sufficiently familiar with these complicated topics.  *See, e.g.*, *Gayle* v. *Nat'l R.R. Passenger Corp.*, No. 06 Civ. 6956 (PAC) (GWG), 2010 WL 430948, at *9 (S.D.N.Y. Feb. 8, 2010), *report and recommendation adopted*, No. 06 Civ. 6956 (PAC) (GWG), 2010 WL 882898 (S.D.N.Y. Mar. 9, 2010) (granting summary judgment on negligent maintenance and repair claim where no expert testimony was submitted; concluding that "[t]he Court has no knowledge of the proper scope or manner of work expected of a crane inspector and there is no reason to believe that such knowledge is within the common knowledge and experience of ordinary jurors").

Perhaps out of recognition of this deficiency, Plaintiff now attempts to recast his claim from one sounding in negligence to one sounding in products

21

liability.  (*See* Pl. Opp. 6-9).  Plaintiff submits that he can establish a prima facie negligence claim based solely upon the timeline submitted by Ysabel: Ysabel turned the vehicle into Delta complaining of unintended acceleration (Pl. Opp. 5 ("[p]rior to the accident, Delta's vehicle suffered from a defect" and Ysabel notified Delta of that defect)); no repairs were performed (*id.* ("Delta did nothing to address or repair the defect")); and when the vehicle was released into service it again accelerated unintentionally (*id.* ("On the date that Delta returned the vehicle back into service, the vehicle suffered from the same acceleration issue Mr. Ysabel complained of to Delta pre-accident")).  Plaintiff misapprehends the law.

Plaintiff argues that he need only demonstrate that Delta failed to resolve the unintended acceleration disclosed by Ysabel.  (Pl. Opp. 6).  Yet this is the legal standard applicable to a strict products liability action — which this is not. *See Denny* v. *Ford Motor Co.*, 87 N.Y.2d 248, 257 n.3 (1995) ("In strict products liability cases involving manufacturing defects, the harm arises from the product's failure to perform in the intended manner due to some flaw in the fabrication process, ... [and] the flaw alone is a sufficient basis to hold the manufacturer liable without regard to fault."); *McCarthy* v. *Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997) (in a strict products liability action, a plaintiff need only prove that a defective product caused plaintiff's injury); *Sanders* v. *Quikstak, Inc.*, 889 F. Supp. 128, 131 (S.D.N.Y. 1995) (in strict liability and negligence claims for product liability, plaintiff need only prove that "the product did not

perform as intended and has excluded all causes of the accident not attributable to the defendant" (internal citations omitted)).

A claim for negligent repair is different.  Even putting aside the fact that this action is brought not against the manufacturer of the vehicle, but against the company tasked with its subsequent maintenance, "[t]he duty to properly maintain does not in and of itself fasten liability in the event of an accident due to a defect.  It merely fixes the obligation the negligent performance of which gives rise to liability.  It does not do away with the necessity for proving negligence."  *Buria* v. *Rosedale Eng'g Corp.*, 184 N.Y.S.2d 395, 397 (1959); *Black* v. *Consol. Freightways Corp. of Delaware*, 219 F. Supp. 2d 243, 251 (E.D.N.Y. 2002) (same).  Quite simply, that Delta maintained the vehicle does not *ipso facto* give rise to its strict liability for any injuries occurring thereafter.  It is for this reason that Plaintiff may not just submit evidence of *a* defect (as he might in a product liability action); he must submit evidence from which a jury could infer that Delta's failure to repair *that* defect caused the accident.

As discussed *supra*, Ysabel suggested that at least two potential defects may have been responsible for the unintended acceleration to which he testified. *See* Background Sec. B.  Thus, if Delta had remedied the defect about which Ysabel complained, but not a separate defect that resulted in unintended acceleration on the date of the accident, it would not have been negligent.  As discussed throughout, it was imperative for Plaintiff to submit some evidence as to which defect caused the accident; because such complicated topics are outside the common knowledge of a lay juror, that evidence must come from an

23

expert.  Plaintiff has done neither, instead opting to graft onto his claim what he perceives to be the more-easily attainable standards of an inapposite cause of action.  It is for this reason that the arguments raised in Plaintiff's opposition papers — relying almost exclusively on products liability cases — fall short.

Plaintiff cites to *Jarvis* v. *Ford Motor Co.*, 283 F.3d 33, 43 (2d Cir. 2002), but that case doubly undercuts his argument.  (Pl. Opp. 6-9).  First, *Jarvis* is a products liability action brought against the manufacturer, not an action for negligent repair or maintenance, and it is for that reason that the Court recited the well-accepted maxim applicable to products liability cases: "the law does not require [plaintiff] to prove what specific defect caused [the malfunction]."  *Id.* at 47.  Second, Plaintiff omits mention of the fact that the plaintiff in *Jarvis* actually did submit expert testimony as to the specific manufacturing defect at issue, and proposed an inexpensive remedy for that defect.  *Id.*  Thus, even had Plaintiff brought the strict liability action he now seeks to bring, his proof might nonetheless be deficient.  *See also Henry* v. *Gen. Motors Corp., Chevrolet Motor Div.*, 609 N.Y.S.2d 711, 713 (4th Dep't 1994) (vacating jury verdict for plaintiff in strict liability and manufacturing defect case where the plaintiff's failure to "come forward with some direct proof of the cause of the accident, at least by excluding all causes of the accident not attributable to defendant ... permitted the jury to base its verdict on pure conjecture as to the cause of the accident and [it] cannot be allowed to stand" (internal citations and quotation marks omitted)); *Fox* v. *Corning Glass Works, Inc*, 438 N.Y.S.2d 602, 603 (2d Dep't 1981) (in manufacturing defect case, setting aside jury verdict for plaintiff where

24

she failed to present expert testimony as to the cause of the accident, because "the verdict was based on mere conjecture and must be set aside").

Accordingly, Plaintiff has failed to make out a prima facie case and Delta is entitled to summary judgment on this basis.  "If a plaintiff cannot establish a prima facie case without the benefit of expert testimony, and the plaintiff is unable to procure such testimony, then summary judgment is appropriate." *Adorno* v. *Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 514 (S.D.N.Y. 2004) (citing *Grassel* v. *Albany Med. Ctr. Hosp.,* 636 N.Y.S.2d 154 (3d Dep't 1996)).

### 4.    Plaintiff Cannot Make Out a Negligence Claim

Though the Court need not reach the remaining elements of a negligence claim, a discussion of them is illustrative of the deficiencies in Plaintiff's proof. In order to raise a triable issue of fact as to a negligence claim, Plaintiff must demonstrate that Delta breached its duty to repair or maintain the vehicle in a non-negligent manner, and that this breach caused Plaintiff's injury.  Plaintiff can demonstrate neither.

First, without any evidence as to what caused the accident, it is impossible to determine whether Delta's failure to repair any defect was negligent.  As noted previously, one defect could have caused the initial unintended acceleration, and yet another defect could have caused the second unintended acceleration.  Moreover, absent any evidence as to what caused the accident, whether that cause would be discoverable in a mechanical evaluation, and whether Delta's mechanical evaluations were reasonable, a jury would have

no way to determine whether it was negligent for Delta not to detect and repair a problem with the vehicle.

Second, it follows that Plaintiff also cannot demonstrate that Delta's negligence — rather than, for instance, driver error — caused the accident. Absent any evidence from which a jury could infer negligence on behalf of Delta, a jury would be left to speculate as to whether Delta's negligence caused the accident. Baez's failure to submit expert testimony is fatal to his claim. Defendant is entitled to summary judgment on this basis.[9]

## CONCLUSION

For the reasons discussed herein, Defendant's motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate Docket Entry 52, and to mark the case as closed.

SO ORDERED.

Dated: April 11, 2014
     New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[9]    Delta argues, alternatively, that even if it were to have breached its duty, Baez nonetheless could not demonstrate that Delta caused his injuries. (Def. Br. 12-16). In this regard, Delta claims that Baez's own negligent conduct was a proximate or intervening cause of his injuries. The Court need not reach this issue, having already granted summary judgment to Delta on Baez's negligence claims.